Steven V. Berson Deputy Director Department of Revenue 1375 Sherman Street Denver, Colorado 80261
Dear Mr. Berson:
I am writing in response to your letter of June 11, 1980 requesting a legal opinion concerning the policy of the Department of Revenue (the "department") to deposit checks made out to other payees. You state that the department offers for deposit to its bank account, checks made out to payees other than the department.
QUESTIONS PRESENTED AND CONCLUSIONS
You specifically ask the following questions:
1. Does the department's policy, whereby it offers for deposit to its bank account checks made out to payees other than the department, violate any law?
2. Does this department policy violate any legal responsibility of the department?
 It is my opinion that the department's policy does not violate any law which would subject the department or its employees to criminal penalties. However, applicable sections of the Uniform Commercial Code provide that, in depositing a check to its bank account, the department warrants that it has good title to the check. Therefore, the department may be liable for damages to its depositary bank or to the payee on the check for breach of this warranty if it does not have good title.
ANALYSIS
Your letter states the following facts pertinent to this opinion. Since the beginning of calendar 1980, the department has offered for deposit in its account at the First National Bank of Denver, checks which are made out to payees other than the department. Your letter does not state whether the department indorses such checks. This practice was initiated at the recommendation of an independent accounting firm to facilitate check processing. It is your understanding that this practice is not uncommon in industry.
Your letter further states that when the department deposits a check made out to another payee, the drawee or drawer may refuse to honor the check. The department and First National Bank of Denver have agreed that in that event, the department's account will be charged the amount of the check. If the check exceeds the drawer's liability to the department, the drawer is automatically given a credit on its account with the department, or a refund is issued upon request.
Your first question asks whether the department's policy violates any law. Although your letter does not expressly so state, it is my understanding that the department receives checks made out to other payees when the checks are mistakenly mailed to the department rather than the payee.
There is a substantial question whether the department can be considered to be a "person" liable for violations of criminal law. However, since your question appears to ask for more than technical defenses, this discussion of criminal liability will assume arguendo that the department can be liable criminally for the same conduct that would be a crime if committed by an individual. I have reviewed several provisions of criminal law and concluded that the department's policy does not violate them. Those statutes include: second-degree forgery of a check (C.R.S. 1973, 18-5-103) and fraud by check (C.R.S. 1973, 18-5-205). The one criminal provision which possibly might apply to these circumstances is the theft statute, C.R.S. 1973,18-4-401(1), which provides in pertinent part as follows:
 (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
 (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
 (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; . . . .
A check is considered to be a thing of value for purposes of the theft statute. People v. Marques, 184 Colo. 262,520 P.2d 113 (1974). The question is whether the department's policy amounts to theft of property of the payee on the check. The drawer loses nothing of value because if the check is paid, the department credits the drawer's account in the check amount or makes a refund to the drawer.
The Colorado Court of Appeals has held that the crime of theft was committed where a nursing home received a check for a patient, credited the patient's account with the proceeds, but deposited the check in its general corporate account and refused to pay the proceeds to the patient until two years later, after demand for payment had been made. See Peoplev. American Health Care, Inc., 42 Colo. App. 209,591 P.2d 1343 (1979). The court concluded in that case that it was not necessary to prove an unauthorized taking of the check where the defendant exercised control without authorization and had the requisite intent. The return of the property was held to not necessarily negate the existence of wrongful intent. That decision raises the possibility that someone who deposits a check knowing that someone else is named as payee, might be guilty of theft.
Based upon your representations concerning the department's policy, I do not believe that the department has the necessary wrongful intent to make it liable under the theft statute. The department's apparent intent is to consider the check as intended for the department, even though someone else may be named as payee, and to credit the proceeds accordingly until directed by the drawer to do otherwise. By contrast, in theAmerican Health Care, Inc. case the nursing home defendant admitted that the proceeds of the check belonged to its patient and not to it.
Your second question asks whether the department's policy violates any legal responsibilities the department may have. The department's practice may make the department liable for civil damages under certain circumstances. The department would also have certain defenses depending upon the particular circumstances of a given case. Most of the department's legal responsibilities in this matter are established by the Uniform Commercial Code (the "UCC") as enacted by Colorado in title 4, C.R.S. 1973.
Ordinarily, a check is the property of the holder or payee.See Commercial Credit Corp. v.University National Bank of Fort Collins, 590 F.2d 849 (10th Cir. 1979). The department is not the payee of the checks discussed in this opinion and cannot be a holder because the check is drawn or issued to the order of someone else.See C.R.S. 1973, 4-1-201(20). If the department indorses the check, that indorsement is an unauthorized signature which is not effective as the indorsement of the payee, but makes the department liable on the check to a person who in good faith pays the check or takes it for value. See C.R.S. 1973,4-1-201(43); C.R.S. 1973, 4-3-404(1).
Under the UCC, when the department deposits a check made out to another payee it is breaching its warranty that it has good title to the check. C.R.S. 1973, 4-4-207. The warranty runs to its depositary bank and to the payor bank or other payor who in good faith pays or accepts the item. Damages are limited to the consideration received plus finance charges and expenses related to the item, if any. C.R.S. 1973, 4-4-207(1) and (3).
The department's agreement with its depository bank requires that its account be charged for any checks on which payment is refused. The department might be held liable for finance charges and related expenses as well, in an appropriate case.
The department also may be liable to the payee under provisions of the UCC for tortious conversion of the check. C.R.S. 1973,4-3-419(1) states:
(1) An instrument is converted when:
 (a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or
 (b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it; or
(c) It is paid on a forged indorsement.
These three specific situations probably do not apply to the circumstances you have described, but they are not exclusive because the common law of conversion also applies. C.R.S. 1973,4-1-103. Citizens State Bank v. National SuretyCorp., 199 Colo. 497, 612 P.2d 70 (1980). This rule has been stated as follows:
 Accordingly there is a conversion of a negotiable instrument when any person unlawfully takes, detains or refuses to surrender a negotiable instrument belonging to another person (cite omitted). More generally, a conversion consists of the wrongful deprivation of property which the plaintiff is entitled to possess.
Commercial Credit Corp. v. University National Bank of FortCollins, supra at 852.
My research has disclosed several cases which discuss liability for conversion, but all involve the liability of a collecting bank, rather than that of the customer who deposited the check. At least two courts have concluded that a bank fails to act in a commercially reasonable manner where the bank, without inquiry, accepts for deposit in its customer's account, checks that were indorsed by its customer but made out to another payee. The bank is therefore liable to the payee for conversion of the check.See National Bank of Georgia v. RefrigeratedTransport Company, Inc., 147 Ga. App. 240,248 S.E.2d 496 (1978); Williams Mechanical Corp. v.Manufacturers Hanover Trust Co., 20 UCC Reporting Service 468 (N.Y.Sup.Ct. — Nassau County, 1976). In those cases, each bank had raised a defense under the U.C.C. that it had acted according to reasonable commercial standards. The U.C.C. does not make that defense available to the customer who deposits with the bank a check made out to another payee. C.R.S. 1973, 4-3-419(3).
SUMMARY
It is the purpose of this analysis to discuss generally the legal responsibilities of the department where it deposits to its bank account, checks made out to other payees. Apparently this policy was adopted on the advice of an accounting firm for the worthy purpose of saving the state the added expense inherent in delayed processing of checks. It is my opinion that the department's policy does not violate any criminal law under the circumstances as I now understand them. The department does, however, have a legal duty to examine checks which it receives and to deposit only checks on which the department is payee.
Under the UCCC, the department warrants that it has good title to any check it deposits to its accounts. As a practical matter, the department's policy of reimbursing its bank for checks on which payment is refused, and its willingness to credit or make a refund to the payor, mitigates damages and greatly decreases the likelihood of a lawsuit. Furthermore, the payee may never know that the department has deposited its check, and the payee has an alternate remedy to pursue the drawer on the original debt.
If you have additional questions concerning this matter, please do not hesitate to contact this office.
Very truly yours,
 J.D. MacFARLANE Attorney General
STATE AGENCIES PUBLIC FUNDS
C.R.S. 1973, 18-4-401(1) C.R.S. 1973, 4-1-201(20) and (43) C.R.S. 1973, 4-4-207(1) and (3) C.R.S. 1973, 4-3-419(1)
REVENUE, DEPT. OF Administrative Div.
The department's policy does not violate any criminal law under the circumstances as now understood. The department does, however, have a legal duty to examine checks which it receives and to deposit only checks on which the department is payee.