S.G. DEACON, Plaintiff–Appellee and
Cross–Appellant,

v.

AMERICAN PLANT FOOD CORPORA-
TION, and Stone's Farm Supply, Inc.,
Defendants–Appellants and Cross–Ap-
pellees.

HILDORN, INC.; Bond–Metz Farms,
Inc.; Kenneth Metz; Robert Metz; and
Ronald Peterson, Plaintiffs–Appellees
and Cross–Appellants,

v.

AMERICAN PLANT FOOD CORPORA-
TION, and Stone's Farm Supply, Inc.,
Defendants–Appellants and Cross–Ap-
pellees.

No. 85CA1457.

Colorado Court of Appeals,
Div. III.

Sept. 21, 1989.*

As Modified on Denial of Rehearing
Oct. 26, 1989.

---

* Prior opinion announced July 27, 1989 was
Withdrawn on September 21, 1989. Petition for
Rehearing of American Plant Food Granted.

Petition for Rehearing of Stone's Farm Supply,
Inc. Denied.

862

Lucero, Kadinger & Lester, Carlos F. Lucero and Helen Sigmond, Alamosa, for plaintiffs-appellees and cross-appellants S.G. Deacon, Hildorn, Inc., Bond–Metz Farms, Inc., Kenneth Metz, Robert Metz and Ronald Peterson.

Sherman & Howard, Joseph J. Bronesky, Denver, for defendant-appellant and cross-appellee American Plant Food Corp.

Rector, Retherford, Mullen & Johnson, J. Stephen Mullen, Neil C. Bruce and Michael R. Waters, Colorado Springs, for defendant-appellant and cross-appellee Stone's Farm Supply, Inc.

Opinion by Chief Judge KELLY.

The defendants, American Plant Food Corporation and Stone's Farm Supply, Inc., appeal the judgment of the trial court awarding damages to the plaintiffs for injury to their potato crops. American argues, among other things, that the trial court erred in finding it strictly liable for the plaintiffs' injuries. Stone's contends that the trial court erred in applying the doctrine of negligence *per se*, and in finding that Stone's breached the implied warranties of merchantability and fitness for a particular purpose. Stone's further asserts that the trial court erred in setting the date for calculation of prejudgment interest.

The plaintiffs cross-appeal asserting that the trial court erred in dismissing their breach of express warranty claim and in awarding inadequate damages. In addition, the plaintiffs argue that Stone's appeal is frivolous and should be dismissed with sanctions. We affirm in part and reverse in part.

In the spring of 1980, each plaintiff purchased fertilizer from Stone's, the components of which were supplied by four other companies and mixed by Stone's. American was the distributor for the manufacturer of one of the chemical components of the fertilizer. Stone's, prior to mixing the fertilizer, tested each plaintiff's soil to determine his needs and recommended a specific fertilizer blend for each.

Fertilizer was first applied prior to planting the potatoes and a second time when the plants emerged from the ground. During the growing season, the plaintiffs noticed that their crops were not developing normally. They observed crinkling and yellowing of leaves, excessive vine growth, and misshapen and undersized potato tubers.

The plaintiffs contacted the president of Stone's, who visited their fields and notified its suppliers of the problems. Numerous agronomists examined the plants, and took soil and fertilizer samples. They reached differing conclusions, as to the cause of the damage, but most agreed that herbicide contamination of the plaintiffs' fertilizer was likely.

The plaintiffs sued Stone's and its suppliers, alleging that Stone's had negligently supplied herbicide-contaminated fertilizer and that it had breached its express and implied warranties. They also alleged that Stone's suppliers had negligently manufactured the components, and that they had breached their express warranties. All defendants except Stone's and American were ultimately absolved of liability.

## I.

American asserts that the trial court erred by finding it strictly liable for the plaintiffs' injuries. We agree.

■ Section 13–21–402(1), C.R.S. (1987 Repl.Vol. 6A) protects a seller who is not the manufacturer of a defective product from a strict liability action. *Shaw v. General Motors Corp.*, 727 P.2d 387 (Colo.App. 1986). An exception exists, however, when jurisdiction cannot be obtained over the manufacturer. Section 13–21–402(2),

C.R.S. (1987 Repl.Vol. 6A). In such a case, the burden rests with the party asserting the exception to establish its applicability. This matter is jurisdictional; thus, it cannot be waived, and it can be raised at any time.

■ Here, American's pleadings claimed the protection of § 13–21–402(1), and the uncontroverted evidence showed that American was not the manufacturer of the fertilizer component which it supplied. Thus, the burden of proof rested with the plaintiffs to show that they could not obtain jurisdiction over the component's manufacturer. The plaintiffs failed to meet this burden. Consequently, the trial court erred in finding American liable for the plaintiffs' injuries.

■ Inasmuch as American did not manufacture the fertilizer component, it was also error for the trial court to find American liable for negligent manufacturing which was the plaintiffs' only negligence claim against American.

## II.

### A.

Stone's contends that the trial court erred in finding it liable solely on the basis of negligence *per se* because it violated § 35–12–112, C.R.S. (1984 Repl.Vol. 14). We disagree.

■ Violation of a statute constitutes negligence *per se* if the injury is of the type sought to be protected against and if the injured party is a member of the class to be protected. *Iverson v. Solsbery*, 641 P.2d 314 (Colo.App.1982).

The Commercial Fertilizer, Soil Conditioner, Plant Amendment, and Agricultural Liming Material Act, § 35–12–101, et seq., C.R.S. (1984 Repl.Vol. 14), reflects a legislative intent to protect consumers against the manufacture and sale of fertilizers containing harmful ingredients. It imposes a broad duty upon distributors of commercial fertilizer without regard to their knowledge of the contamination.

■ Section 35–12–112(1)(a), C.R.S. (1984 Repl.Vol. 14) provides that:

"No person shall distribute an adulterated product. A commercial fertilizer ... is deemed adulterated:

(a) If it contains any deleterious or harmful ingredient in sufficient amount to render it injurious to beneficial plant ... life, when applied in accordance with directions for use on the label...."

A distributor is defined as any person who sells commercial fertilizer in Colorado. Section 35–12–103(12), C.R.S. (1984 Repl. Vol. 14).

■ The trial court found that Stone's distributed fertilizer contaminated with herbicides which injured the plaintiffs' crops. As buyers of commercial fertilizer, the plaintiffs are within the class of persons to be protected by § 35–12–112. *See White v. Rose*, 241 F.2d 94 (10th Cir.1957) (buyers of livestock feed are within the class of persons to be protected by act regulating the sale of commercial feeding stuffs). Accordingly, the finding that Stone's violated § 35–12–112 was sufficient to impose liability on it.

■ Stone's contention that there was insufficient evidence of causation is without merit. The trial court found, on supporting evidence, that the herbicide-contaminated fertilizer was the proximate cause of the plaintiffs' injuries. We will not disturb this finding on appeal. *See Bloxsom v. San Luis Valley Crop Care, Inc.*, 198 Colo. 113, 596 P.2d 1189 (1979).

### B.

■ Stone's argues that the trial court erred in imposing liability for breach of the implied warranties of merchantability and fitness for a particular purpose. We disagree.

A warranty that the goods are merchantable is implied if the seller is a merchant with respect to goods of that kind. Section 4–2–314, C.R.S. A warranty of fitness for a particular purpose is implied when the seller has reason to know of a particular purpose for the goods and that the buyer relies on the seller's skill to select the goods. Section 4–2–315, C.R.S.

The trial court found that, because the fertilizer contained herbicides, it was neither fit for its ordinary purposes nor for the plaintiffs' particular purposes. Accordingly, the trial court held that both implied warranties were breached. This was not error.

### C.

Stone's asserts that the trial court erred in selecting the date from which prejudgment interest would accrue. Stone's argues that prejudgment interest should accrue only from the time of "wrongful withholding" which, it contends, does not occur until a creditor makes a demand for payment that is refused. Further, Stone's argues that the plaintiffs here did not make such a demand until the filing of their claim. We do not agree.

■ Judgment creditors are entitled to receive prejudgment interest "for all moneys ... after they are wrongfully withheld ... to the date of payment or to the date judgment is entered, whichever first occurs...." Section 5–12–102(1)(b), C.R.S. (1988 Cum.Supp.). Thus, plaintiffs are entitled to interest from the time their action accrues. *See Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo.1989); *Isbill Associates, Inc. v. City & County of Denver*, 666 P.2d 1117 (Colo.App.1983).

*National Surety Corp. v. Citizens State Bank*, 734 P.2d 663 (Colo.App.1986) and *W.H. Woolley & Co. v. Bear Creek Manors*, 735 P.2d 910 (Colo.App.1986), cited by Stone's, do not change that rule. In those cases, a wrongful withholding did not occur until a demand for payment was made because such a demand was an element of the claims asserted.

■ In this case, however, a demand for payment is not an element of the plaintiffs' claim. Thus, the plaintiffs are entitled to prejudgment interest from the time their actions accrued, that is, from the time their damages occurred. The trial court chose January 1, 1981, as the date that the plaintiffs' damages occurred. There is support in the record for that conclusion; thus, we will not reverse it. *See Martinez v.*

*Continental Enterprises,* 730 P.2d 308 (Colo.1986).

## III.

### A.

■ We reject the plaintiffs' contention on cross-appeal that the trial court erred in refusing to find that the defendants breached an express warranty. Whether a statement constitutes a warranty is an issue of fact. *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984). Here, the trial court found, on supporting evidence, that the only warranties in this transaction were the implied warranties given by Stone's. Accordingly, it properly denied recovery on an express warranty theory. *See Martinez v. Continental Enterprises, supra.*

### B.

The plaintiffs assert that the trial court erred by refusing to award them the cost of their fertilizer. We disagree.

■ The measure of damages for crop loss is the amount the crop would have brought on the market less the costs incurred to raise, harvest, and sell the crop. *Hoover v. Shott,* 68 Colo. 385, 189 P. 848 (1920); *Roberts v. Lehl,* 27 Colo.App. 351, 149 P. 851 (1915). In effect, this is an award of the farmer's expected gross profit from which the plaintiffs must pay their costs of operation.

■ Here, the trial court determined the difference between each plaintiff's expected and actual production. It then multiplied this lost production by the price per production unit each plaintiff expected to receive. If the trial court had gone on to award fertilizer costs, each plaintiff would have recovered more than his net profit. Since net profit is the proper measure, the trial court did not err in refusing to award each plaintiff's fertilizer costs.

### C.

Two of the plaintiffs argue that they received inadequate damages. We dis-

agree. The trial court constructed formulae different from those advanced by plaintiffs to calculate the damages to Hildorn, Inc., and Bond–Metz Farms. Because there is support in the record for the trial court's formulae, we will not set aside these awards. *See Allison v. Smith,* 695 P.2d 791 (Colo.App.1984).

### D.

We do not agree that the trial court erred by not allowing recovery for alleged losses in 1981. The trial court found that there was no evidence that the contaminants found by the testing in 1980 would have been harmful to the potato crops in 1981. This factual finding was within the trial court's discretion. The trial court's finding regarding the plaintiffs' comparative negligence was unnecessary in light of its finding that the evidence did not support a claim for damages in 1981; thus, we need not address that finding.

### E.

■ We also do not agree that the appeal by Stone's is frivolous and should be dismissed with sanctions. An appeal is frivolous only if the proponent can present no rational argument based on the evidence or law in support of its appeal. *Mission Denver Co. v. Pierson,* 674 P.2d 363 (Colo. 1984). We cannot conclude that Stone's, although unsuccessful, presented no rational argument. Accordingly, we decline to dismiss the appeal or to impose sanctions.

The judgment against American is reversed. In all other respects, the judgment is affirmed.

STERNBERG and TURSI, JJ., concur.